TOWNSLEY, A MINOR, ET AL., *v.* CINCINNATI GARDENS, INC.

(No. A-247377—Decided March 29, 1973.)

Court of Common Pleas for Hamilton County.

*Messrs. Vogel, Hirsch, Heis & Vogel* and *Mr. William C. Hirsch,* for plaintiffs.

*Messrs. Barbour, Kimpel & Allen* and *Mr. David N. Bodley,* for defendant.

KEEFE, J. This cause was tried to the court without a jury.

The plaintiffs are father and son. When the complaint was filed the son was a minor. The defendant is Cincinnati Gardens, Inc.

This opinion refers to the son as plaintiff. The father's participation is limited to the role of having provided medical and dental care for the son.

The plaintiff son was 17 years of age on the evening

of November 2, 1969, when with a friend he purchased a ticket and entered the defendant's sports arena to watch the Harlem Globetrotters play basketball.

During the course of the game the plaintiff went to a men's rest room on the second level of the Gardens. The room contained one toilet, one urinal and one washstand, and was a small facility. While there plaintiff was confronted by several young males older and larger than the plaintiff, who solicited money from him and upon receiving none struck plaintiff in and about the face and mouth knocking out two front teeth and beating him into a semi-unconscious condition.

There was no one in the rest room except plaintiff and his assailants, who always have been unknown to him. When plaintiff entered the men's room there were no guards or ushers to be seen; there was none at the time of the assault and none when the plaintiff came out after being beaten. The washroom was dimly lighted.

One of the witnesses at the trial was the head of the security department at the Gardens on the night of the assault upon plaintiff. Among other things the security head testified that on the night in question approximately 5,000 customers were present. He also stated that security for that night was made up of five patrolmen, that is, the captain himself and four others. Two were stationed on the main level and had nothing to do with patrol or security responsibilities on the second level where the assault took place. The responsibilities of the other three included supervising the entire remainder of the Gardens.

Testimony given by the head of the security force included the following statements:

"Q. Would there be any problem insofar as loitering in the halls is concerned?

"A. Yes, sir. We have patrols in the halls. We have patrols roaming the restrooms.

"Q. And what would these patrols be charged with doings? What is their responsibility?

"A. Watching for anything that shouldn't be happening.

"Q. Anything that shouldn't be happening? What do you mean?

"A. Well, I think that's obvious, sir. Anything that shouldn't happen at a show: fights, robbing—.

"Q. In the washroom?

"A. Well, that would be one place, yes.

"Q. Now, this patrol of yours, I gather they're all experienced men, are they?

"A. Yes, sir.

"* * *

"Q. The washroom is a logical place for you to watch?

"A. This is why we check them."

From other portions of this witness' testimony the court infers that while the security head denied the previous occurrence of any incidents *exactly* like the one involving the plaintiff, nevertheless there had been *similar* incidents in the Gardens.

The young plaintiff on November 2, 1969, was a business invitee of defendant. An occupier of premises for business purposes is not an insurer of the safety of his business invitees while they are on those premises. However, an occupier of premises for business purposes may be subject to liability for harm caused to a business invitee by conduct of third persons. *Howard* v. *Rogers* (1969), 19 Ohio St. 2d 42, 48 O. O. 2d 52.

The defendant Gardens either knew or in the exercise of ordinary care should have known of the danger which victimized the plaintiff on November 2, 1969.

Although the Supreme Court in *Howard* v. *Rogers* held for the defendant, the facts were different from those in this case, and the Supreme Court categorically stated as a proposition of law that an occupier of premises for business purposes may be subject to liability for harm caused to a business invitee by the conduct of third persons in a proper case.

Some of the factual differences in *Howard* v. *Rogers* and the present case should be noted. In *Howard* v. *Rogers* a dance was being conducted in a junior high school gymnasium in the town of Franklin, Warren County, Ohio. The population of Franklin was then 7,917, and the best evidence is that there were only about 50 high school students at an event where disorder erupted. The assault in the case before me occurred in a large metropolitan sports arena

with approximately 5,000 persons present, and the incident took place in an isolated, dimly lighted public rest room, which the security head admitted was a security responsibility.

On March 14, 1973, a few days prior to the trial of this case, the Supreme Court decided *Mason* v. *Roberts*, 33 Ohio St. 2d 29. *Mason* is also concerned with a business establishment, and the Supreme Court makes this pronouncement in the second paragraph of the syllabus:

"The proprietor of a business establishment wherein alcoholic beverages are dispensed for consumption upon the premises owes a duty to members of the public while they are in his place of business to exercise reasonable care to protect them from physical injury as a result of violent acts of third persons."

The Supreme Court in *Mason* cites *Howard* v. *Rogers*, *supra*, with approval. Also, see *Taggart* v. *Bitzenhofer*, 33 Ohio St. 2d 35, decided by the Supreme Court on March 21, 1973.

With the present state of the law and the current general threat of violent crime, establishments such as the defendant may have to add to their security forces to protect effectively their business invitees.

This court gives judgment to the plaintiffs and awards damages as follows: to the father, three hundred and eighty-one dollars ($381.00) dental expenses incurred by him; to the son, three hundred and forty-six dollars ($346.00) dental expenses reasonably certain to be expended by him for the replacement of the present bridge in the front of his mouth; and seventeen hundred and fifty dollars ($1,750.00) to reasonably compensate the plaintiff son for the actual injuries proximately caused by the negligence of the defendant. Total judgment for the plaintiffs is twenty-four hundred and seventy-seven dollars ($2,477.00).

This opinion constitutes the court's findings of fact and conclusions of law. Counsel are requested to file a judgment entry consistent with these findings and conclusions.

*Judgment for plaintiffs.*