GUARDIANSHIP OF NEWCOMB, INCOMPETENT, ET AL., APPELLANTS, *v.* CITY OF BOWLING GREEN; HOWARD'S CLUB H ET AL., APPELLEES; SEARS.

(No. WD-87-5—Decided November 6, 1987.)

*M. Shad Hanna,* for appellants.
*John W. Hackett, Jr., Robert A. Koenig* and *Michael J. Halleck,* for appellees.

RESNICK, J. This cause is before the court on appeal from a judgment of the Wood County Court of Common Pleas wherein that court rendered a judgment of dismissal for failure to state a claim upon which relief can be granted in favor of J. D. Bar Corp.,

Howard's Club H, Jeffrey D. Uhlman, Main Street Bar, The Long Branch Saloon, Inc., and Robert G. Beers, defendants-appellees.[1] The guardianship of Bradford Thomas Newcomb, an incompetent, by and through Marjorie Newcomb as his guardian, Marjorie Newcomb, individually, and Molly Newcomb, individually, plaintiffs-appellants, filed a timely notice of appeal and assert the following assignments of error:

"I. The trial court committed error prejudicial to the plaintiffs-appellants by dismissing their second amended complaint with prejudice against the defendants-appellees on the basis that 4399.01 of the Ohio Revised Code does not provide a cause of action against the bar owner who serves intoxicants to an intoxicated person, and thereby proximately causes injuries or damages to a third party where said third party was neither a patron of the bar owner nor did said injuries occur on the premises of the bar owner.

"II. The trial court committed error prejudicial to the plaintiffs-appellants by dismissing their second amended complaint with prejudice against the defendants-appellees on the basis that 4301.22 of the Ohio Revised Code does not provide a cause of action against a bar owner who serves intoxicants to an intoxicated person, and thereby proximately causes injuries or damages to a third party where said third party was neither a patron of the bar owner nor did said injuries occur on the premises of the bar owner.

"III. The trial court committed error prejudicial to the plaintiffs-appellants by dismissing their second amended complaint with prejudice

against the defendants-appellees on the basis that 2307.60 of the Ohio Revised Code does not provide a cause of action against a bar owner who serves intoxicants to an intoxicated person, and thereby proximately causes injuries or damages to a third party where said third party was neither a patron of the bar owner nor did said injuries occur on the premises of the bar owner.

"IV. The trial court committed error prejudicial to the plaintiffs-appellants by dismissing their second amended complaint with prejudice against the defendants-appellees on the basis that common law negligence and the public policy of this state do not provide a cause of action against a bar owner who serves intoxicants to an intoxicated person, and thereby proximately causes injuries or damages to a third party where said third party was neither a patron of the bar owner nor did said injuries occur on the premises of the bar owner."

In essence, appellants' second amended complaint seeks damages arising from a pedestrian/automobile accident. The complaint avers that the driver of the automobile, Larry J. Sears, had been served intoxicating beverages by appellees' establishments while he was allegedly intoxicated. The complaint further avers that Bradford Newcomb, the pedestrian who was struck by Sears, had not been a patron of the taverns and that the accident took place some distance away from the establishments and, thus, did not occur on the taverns' premises.

*Kodish* v. *Board* (1975), 45 Ohio App. 2d 147, 74 O.O. 2d 167, 341 N.E. 2d 320, paragraph two of the syllabus, held:

---

[1] Larry J. Sears, patron of appellees' establishments and the driver of the automobile which struck Bradford Thomas Newcomb, and the city of Bowling Green, Ohio, the city in which the accident took place, are not parties to this appeal because they settled the case with appellants out-of-court.

"The task to be utilized in granting a motion to dismiss for a failure to state a claim upon which relief can be granted is whether it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

See, also, *Conley* v. *Gibson* (1957), 355 U.S. 41; *O'Brien* v. *University Community Tenants Union* (1975), 42 Ohio St. 2d 242, 71 O.O. 2d 223, 327 N.E. 2d 753; and *Stephens* v. *Boothby* (1974), 40 Ohio App. 2d 197, 69 O.O. 2d 189, 318 N.E. 2d 535.

Before addressing appellants' assignments of error, we initially note that R.C. 4399.18 is inapplicable to the instant case because the accident and resulting injuries took place on December 4, 1983, prior to the date on which R.C. 4399.18 went into effect. See *Monsen* v. *Glass Bowl Lanes* (Feb. 6, 1987), Lucas App. No. L-86-222, unreported.

In their first assignment of error, appellants contend that the trial court erred in holding that R.C. 4399.01 does not provide them with a cause of action. R.C. 4399.01, the Dram Shop Act, provides:

"A husband, wife, child, parent, guardian, employer, or other person injured in person, property, or means of support by an intoxicated person, or in consequence of the intoxication, habitual or otherwise, of a person, after the issuance and during the existence of the order of the department of liquor control prohibiting the sale of intoxicating liquor as defined in section 4301.01 of the Revised Code to such person, has a right of action in his own name, severally or jointly, against any person selling or giving intoxicating liquors which cause such intoxication, in whole or in part, of such person."

Appellants submit that Ohio courts have misinterpreted the clause, "* * * after the issuance and during the existence of the order of the department of liquor control prohibiting the sale of intoxicating liquor as defined in section 4301.01 of the Revised Code to such person * * *." Appellants contend in their brief that the Dram Shop Act refers to "* * * two classes of responsible persons, *i.e.* the intoxicated person, being one who is intoxicated at the time he or she causes injury, and the other being the habitual alcoholic who need not be intoxicated at the time that he or she causes injury * * *" and that the above clause only refers to the latter. We disagree. It is true that the injury may be caused directly by the intoxicated person; the injury may also be in consequence of, or caused indirectly by the person's intoxication, such as when a family member's means of support are jeopardized, in order for there to be a right of action against a seller or provider of intoxicating liquors which cause the person's intoxication. However, we read the statute to say that where a person sells or gives intoxicating liquor to a person on the "blacklist" and the "blacklisted" person thereafter injures someone either directly or indirectly because of the resulting intoxication, the injured person has a cause of action against the liquor provider. The tortfeasor must be "blacklisted" for the injured party to have a cause of action under this code section. No other Ohio court has held otherwise. In fact, the Ohio Supreme Court in *Mason* v. *Roberts* (1973), 33 Ohio St. 2d 29, 62 O.O. 2d 346, 294 N.E. 2d 884, stated at 32, 62 O.O. 2d at 347, 294 N.E. 2d at 887:

"We agree that an action brought under R.C. 4399.01 will not lie unless the name of the allegedly intoxicated patron appeared on the requisite order set forth by the Department of Liquor Control. See R.C. 4399.01 and paragraph one of the syllabus in *Ramon* v. *Spike* (1951), 92 Ohio App. 49."

See, also, *Babcock* v. *Joseph* (Jan.

31, 1986), Lucas App. No. L-85-067, unreported, at 3.

It was not alleged, nor was there any evidence in the record, that there was an order of the Department of Liquor Control prohibiting the sale of intoxicating liquor as defined in R.C. 4301.01 to Larry J. Sears, the recipient of the liquor and driver of the automobile which struck Bradford Newcomb.

Accordingly, appellants' first assignment of error is found not well-taken.

In their fourth assignment of error appellants claim that the trial court erred in holding that common-law negligence and the public policy of this state do not provide them with a cause of action. Appellants further contend in their second assignment of error that the trial court erred in holding that R.C. 4301.22(B) does not provide them with a cause of action. R.C. 4301.22(B) states:

"Sales of beer and intoxicating liquor under all classes of permits and from state liquor stores are subject to the following restrictions, in addition to those imposed by the rules or orders of the department of liquor control:

"* * *

"(B) No sales shall be made to an intoxicated person."

We have found four cases which address whether R.C. 4301.22(B) provides a cause of action against a tavern owner for a person injured away from the tavern premises.

The first of these cases is *Tomlinson* v. *McCutcheon* (N.D. Ohio 1982), 554 F. Supp. 186. The federal district court analyzed *Mason, supra; Kemock* v. *The Mark II* (1978), 62 Ohio App. 2d 103, 16 O.O. 3d 254, 404 N.E. 2d 766; and *Taggart* v. *Bitzenhofer* (1972), 35 Ohio App. 2d 23, 64 O.O. 2d 157, 299 N.E. 2d 901, affirmed (1973), 33 Ohio St. 2d 35, 62 O.O. 2d 372, 294 N.E. 2d 226, which all involved situations where the injured party was also a patron of the defendant-tavern. The federal trial court construed these cases as being ambiguous and concluded that R.C. 4301.22(B) "* * * was enacted for the protection of the general public, that violation of the statute constitutes negligence *per se,* and that plaintiffs [who were injured as a result of a vehicular accident involving an intoxicated driver] are within the class of persons intended to be protected by the statute." *Id.* at 190. The court further concluded that "* * * the law of Ohio imposes liability upon a tavern keeper who serves intoxicants to an intoxicated person, and thereby proximately causes injury or damage to another." *Id.*

The second case is *McDaniel* v. *Brandywine Mills, Inc.* (May 8, 1985), Summit App. No. 11913, unreported. The Ohio appellate court therein stated at 2 that the issue was "* * * what duty is owed to the public at large by a proprietor who sells alcoholic beverages to an intoxicated patron. * * *" The court then stated at 2-3:

"Currently in Ohio, there is no statutory or common law duty running from the proprietor to the public at large. The question presented in this case is whether this policy should continue. While there is much to be said for establishing such a duty in general, when the details of such a policy are considered, there is still room for legitimate debate.

"We are convinced that such a major change in public policy should emanate from either the General Assembly or the Supreme Court. When the Supreme Court has not recently spoken on an issue, it may be appropriate for an intermediate appellate court to announce new law. However, within the past year, the Ohio Supreme Court had before it a case with both direct and indirect implications on the issue before us.

"In *Settlemyer* v. *Wilmington Veterans Post No. 49* (1984), 11 Ohio St. 2d 123, the Supreme Court had the opportunity to announce a new rule of law. [It] chose not to do so. *Settlemyer,* when read for what is unsaid as well as for what is said, reveals that the Supreme Court, at least on June 13, 1984, was approaching the question with extreme caution and was not prepared at that time to expand the common law. Some read *Settlemyer* as a call for legislative action.

"We are urged that the Supreme Court has signaled a shift in the common law and that we should lead the way. This argument would be acceptable if we were reasonably confident as to the next ruling of the high court. However, if we were to misjudge the court either in the details of such a shift or even if there is to be a shift at all, the mischief created in the lower courts subject to our jurisdiction would be substantial.

"In the interest of orderly judicial administration, we believe we should await the lead of the Supreme Court. * * *"

The third case is *Crum* v. *Lambe* (Aug. 6, 1987), Washington App. No. 86 CA 13, unreported. That appellate court cited *McDaniel, supra,* with approval and declined to follow *Tomlinson, supra,* stating that *Tomlinson* represented a strained interpretation of Ohio case law. *Id.* at 3.

Finally, *Uyttenhove* v. *Navarre* (Nov. 19, 1986), Lucas C.P. No. 86-1623, unreported, states at 2:

"The issue which this Court must address is whether the laws of Ohio in effect prior to R.C. 4399.18 impose liability upon a tavern owner when a patron leaves the establishment intoxicated, and subsequently injures a member of the public at large. This Court recently decided this issue in the negative, in *Wertz* v. *Cline* (May 16, 1985), Lucas C.P. No. 84-2160, unre-

ported; and *Babcock* v. *Joseph* (January 18, 1985), Lucas C.P. No. 84-0481, unreported."

The Lucas County Court of Common Pleas determined that *Mason* held that:

"* * * under R.C. 4301.22(B), a tavern owner owes a duty to members of the public *while they are in his place* of *business* to exercise reasonable care to protect them from injury. * * *" (Emphasis *sic*.) *Id.* See *Mason, supra,* at paragraph two of the syllabus.

The common pleas court also determined that "* * * the Supreme Court declined to extend *Mason* to entail a duty of care to members of the public at large. *Settlemyer* v. *Wilmington Veterans* [*sic*] *Post No. 49* (1984), 11 Ohio St. 3d 123, Holmes, J., concurring. * * *" *Id.* at 2.

The court concluded that the plaintiff was a member of the public at large and therefore had no cause of action against the defendant either at common law or under R.C. 4301.22(B). *Id.*

*Settlemyer* v. *Wilmington Veterans Post No. 49* (1984), 11 Ohio St. 3d 123, 11 OBR 421, 464 N.E. 2d 521, involved an action by a third party against a social host (non-commercial) dispenser of alcoholic beverages. The Ohio Supreme Court stated at 125, 11 OBR at 423, 464 N.E. 2d at 522-523, that:

"Appellant contends that *Mason, supra,* imposes a duty upon individuals who dispense alcoholic beverages to refrain from serving intoxicants to inebriated persons, and that this duty should be extended to the public at large, in that an establishment should be held liable for injuries to third persons which are proximately caused by the establishment in providing alcoholic beverages to intoxicated persons.

"As we acknowledged in *Mason,* at 33, the common law historically provided no remedial basis for third persons injured by intoxicated individuals

to recover from the provider of the alcoholic beverages. It had been thought that it was the consumption, and not the sale of the alcohol, that was the proximate cause of a person's intoxication, and that the mere providing of the beverages was, at best, a remote cause. Over the years, courts have abandoned this type of reasoning as being extreme, because in effect, it cloaked the providers of intoxicants with a blanket immunity from potential lawsuits. By the same token, in establishing new standards to adjudicate these types of lawsuits, *courts have been careful to avoid the other extreme which could open the door to unlimited liability wherein a seller or provider could be placed in the situation of a veritable insurer of the alcohol recipient's misdeeds.*

"* * *

"Generally, in the absence of a statute to the contrary such as a Dram Shop or Civil Damage Act, the rule across the country has run contra to the allowance of an action by third persons injured by an intoxicated individual, against the provider of the alcoholic beverages, regardless of whether the provider is a commercial proprietor or a social host. See 45 American Jurisprudence 2d (1969) 853, Section 554; Annotation (1966), 8 A.L.R. 3d 1412; Annotation (1980), 97 A.L.R. 3d 528, at 571-572. In *Mason,* we stated that the Dram Shop Act (R.C. 4399.01) did not provide the exclusive remedy against commercial providers of intoxicating beverages, and we set forth two situations in which the commercial provider of alcoholic beverages could be subjected to liability *to another patron. * * *"* (Emphasis added.)

The court then went on to distinguish *Mason, supra,* based on the fact that *Settlemyer* involved a social host rather than a commercial provider of alcohol and concluded that R.C.

4301.22(B) and (C) could not provide appellant with a cause of action. *Id.* at 126, 11 OBR at 424, 464 N.E. 2d at 523-524. The court further concluded that neither should the common-law case of *Mason* be extended to grant appellant a cause of action. *Id.* at 127, 11 OBR at 424-425, 464 N.E. 2d at 524. Justice Holmes in his concurrence emphasized that "[i]t is important to note that *Mason* v. *Roberts* was not addressing the issue of the duty owed by a proprietor to the public at large, but only the duty owed to other patrons of the liquor establishment. * * *" *Id.* at 128, 11 OBR at 425, 464 N.E. 2d at 525. He then stated, "[t]his court has never extended the case law of *Mason* to the general public, and the majority should so state more clearly here." *Id.,* 11 OBR at 425-426, 464 N.E. 2d at 525. Justice Holmes continued:

"It may well be argued that sound public policy might dictate a higher degree of duty owed by a proprietor of a liquor establishment to the public at large in continuing to serve an inebriated patron who later becomes involved in a disastrous automobile accident. But, if such is a desirable change in our state laws, it behooves the General Assembly to provide such change." *Id.,* 11 OBR at 426, 464 N.E. 2d at 525.

Based upon all of the foregoing, we agree with the courts in *McDaniel,. supra; Crum, supra;* and *Uyttenhove, supra,* and conclude that neither R.C. 4301.22(B) nor the common law provides appellants with a cause of action.

Accordingly, appellants' second and fourth assignments of error are found not well-taken.

Appellants' third assignment of error asserts that the trial court erred in holding that R.C. 2307.60 does not provide them with a cause of action. Appellants contend that since a violation of R.C. 4301.22(B) constitutes a criminal act pursuant to R.C. 4301.99(E),

R.C. 2307.60 allows appellants to maintain their cause of action.

Former R.C. 2307.60, applicable to the relevant times herein, provided:

"Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action, unless specifically excepted by law, and may recover the costs of maintaining the civil action, exemplary damages, and attorney's fees if specifically authorized by any other section of the Revised Code or if authorized under the common law of this state. No record of a conviction, unless obtained by confession in open court, shall be used as evidence in a civil action brought pursuant to this section." (See 140 Ohio Laws, Part II, 3783, 3787.)

R.C. 2307.60 constituted an amendment and renumbering of R.C. 1.16, which stated:

"Any one injured in person or property by a criminal act may recover full damages in a civil action, unless specifically excepted by law. No record of a conviction, unless obtained by confession in open court, shall be used as evidence in a civil action brought for such purpose."

In *Peterson* v. *Scott Constr. Co.* (1982), 5 Ohio App. 3d 203, 5 OBR 466, 451 N.E. 2d 1236, this court held at paragraph one of the syllabus:

"R.C. 1.16 does not operate to create a cause of action. It provides that a recognized civil cause of action is not merged in a criminal prosecution which arose from the same act or acts. (*Schmidt* v. *Statistics, Inc.,* 62 Ohio App. 2d 48, 49.)"

Accordingly, this court finds that R.C. 2307.60 does not operate to create a cause of action in the case *sub judice* separate and apart from any civil action which may be recognized under R.C. 4301.22(B). Appellants' third assignment of error is found not well-taken.

In accordance with the test for adjudicating a Civ. R. 12(B)(6) motion as found in *Conley, supra; O'Brien, supra; Kodish, supra;* and *Stephens, supra,* it appears beyond doubt that appellants can prove no set of facts entitling them to relief.

On consideration whereof, the court finds substantial justice has been done the parties complaining and the judgment of the Wood County Court of Common Pleas is affirmed. It is ordered that appellants pay the court costs of this appeal.

*Judgment affirmed.*

HANDWORK, P.J., and CONNORS, J., concur.